Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

July 29, 2021

VIA ELECTRONIC FILING

The Honorable Harvey Bartle III
16614 U.S. Courthouse
Courtroom 16-A
Philadelphia, Pennsylvania 19106

Re:   Sentencing of Ivan Durasevic, Index No. 2:19-cr-00579-HB

Dear Judge Bartle:

    We respectfully write to submit the following victim impact statement on behalf of MSC Mediterranean Shipping Company SA ("MSC" or "the company"), pursuant to the Crime Victims' Rights Act, 18 U.S.C. § 3771 ("CVRA"), relating to the upcoming sentencing of Ivan Durasevic (hereinafter the "Defendant") arising from his participation in a drug smuggling scheme aboard the *MSC Gayané*.

    The CVRA defines a "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense." 18 U.S.C. § 3771(e)(2)(a). MSC suffered significant financial and reputational harm as a direct and proximate result of the Defendant's conduct. As a crime victim, MSC submits this victim impact statement on the public record as part of its ongoing efforts to deter current and future crew members from engaging in narcotics trafficking. Among other things, MSC will be able to point crew members to this letter as a further demonstration that, should any crew member capitulate in participating in drug trafficking contrary to the law and company policy in the future, MSC will make sure that the court sentencing such crew member after his/her inevitable prosecution is aware of the financial and reputational harm caused by that individual's criminal conduct.

**I.    MSC is a Victim of the Defendant's Conduct**

    **A.    MSC is a Family-Owned Company That Prides Itself on Adhering to the Highest Ethical Standards in its Business Conduct**

    MSC is a family-owned company founded more than fifty years ago, with just one vessel. Through hard work, relentless entrepreneurial spirit, and an unmatched commitment to customer service, MSC has become the second largest container shipping company in the world.

Honorable Harvey Bartle III
July 29, 2021
Page 2

Today, MSC's fleet includes more than 420 MSC-owned or bareboat chartered vessels, staffed by more than 9,500 crew members at sea at any given time. A further 210 time-chartered vessels complete the MSC fleet. This fleet has enabled MSC to ship crucial goods and provide services to its customers and business partners worldwide. MSC vessels call upon approximately 500 ports over about 200 trade routes and carry more than 20 million containers annually around the world. In the United States, where MSC has called on ports for approximately 35 years and supplies more than 20% of the container vessel capacity serving the U.S., MSC's operations include 11 U.S.-based offices and more than 1,100 U.S.-based employees.[1]

A central component of MSC's identity has been its commitment to running a principled and ethical business. This is reflected in MSC's long history of cooperation and partnership with customs and other law enforcement authorities in the U.S. and around the world to ensure the safety and security of the containerized shipping industry. For example, the company has been a committed partner in the U.S. Customs Trade Partnership Against Terrorism ("CTPAT") since the program's inception in 2002. As part of CTPAT, MSC has worked extensively with Customs & Border Protection ("CBP") and other U.S. law enforcement agencies to help prevent drug trafficking aboard its vessels.

### B.   MSC's Anti-Smuggling Procedures

MSC has had robust anti-smuggling policies and procedures in place for many years and has consistently made its commitment to preventing drug trafficking and any other illicit activities aboard its vessels clear to all crew members. Among other things, both before and after the *Gayané* seizure, MSC has deployed significant, industry-leading methods to detect and prevent drug smuggling. For many years, MSC has applied a strict "zero tolerance" policy toward crew member involvement with drugs. Any crew found in possession of, using, or smuggling drugs must be immediately brought ashore, dismissed, and never employed again as a penalty for a single violation of this policy. This message is reinforced by notices—prominently posted on ships and within crewing offices and training centers—warning crew members against possession of narcotics and alerting them that MSC fully cooperates with governmental authorities to prosecute such conduct. Further, MSC has detailed procedures to prevent unauthorized access to MSC vessels, either by the gangway or from approaching vessels while in port. Moreover, MSC conducts vessel searches for drugs and stowaways upon leaving a port as well as before entering a U.S. port.

---

[1] Including the U.S.-based employees, MSC has approximately 18,800 onshore employees worldwide for a total, with crew, of over 28,300 personnel.

Honorable Harvey Bartle III
July 29, 2021
Page 3

As part of its industry-leading security measures, MSC maintains an anonymous whistleblower hotline and offers cash rewards for whistleblowers who report misconduct. MSC also has rigorous procedures to conduct due diligence on prospective crew members before they are hired. Among other things, at the time of the seizure, the MSC entity operating the *Gayané* had an industry-leading policy requiring all crew members who might call on U.S. ports to obtain a United States C1/D Visa before they embarked on an MSC vessel. This visa requirement meant that an independent background check of the crew members would have been conducted by the United States government, drawing on its expertise and intelligence resources.

MSC's anti-smuggling procedures meet or exceed all international ship security and industry standards, as well as CTPAT's Minimum Security Criteria for carriers. CBP has repeatedly approved and praised MSC's security and anti-smuggling procedures. Indeed, in connection with four successive CTPAT revalidation reviews of MSC's security procedures within a nine-year timeframe, CBP each time issued a written report confirming that MSC was in compliance with CTPAT Minimum Security Criteria and even reached CTPAT Best Practices in certain areas. For example, in an April 2016 letter to MSC reporting the findings of its 2015 CTPAT revalidation review, which included CBP visits to several locations in South America, CBP stated, "your company has demonstrated effective security within your own organization as well as a dedication to working with business partners to address supply chain security vulnerabilities that may exist. This work is the essence of CTPAT, and CBP appreciates your commitment and cooperation." CBP has also repeatedly recognized MSC's security commitment outside of the CTPAT revalidation process, issuing formal letters of gratitude to MSC and even a Commissioner's Award. In fact, in April 2019, just two months before the Defendant's arrest, CBP recognized in writing that MSC exercised the "highest degree of care and diligence" in working to prevent drug smuggling aboard its vessels.[2]

MSC has extensively cooperated on an ongoing, continual basis with CBP, the Department of Homeland Security, and other law enforcement agencies in the United States

---

[2] Over the past 2 years since the *Gayané* seizure, MSC has spent tens of millions of dollars, on top of what was already being spent, to enhance its anti-smuggling procedures in response to the criminal conspiracy aboard the *Gayané*, including but not limited to expanded deployment on MSC vessels of teams of security guards and CCTV cameras monitored remotely in real-time by third-party security specialists. Enhancements also include routine vessel inspections by canine units and diver teams, particularly in higher-risk areas like South America, and the expedited development and rollout of smart containers that can sense and issue an alert if someone breaches or tampers with the container. In total, MSC's post-*Gayané* security enhancements are projected to cost more than $100 million from 2019 through 2024.

Honorable Harvey Bartle III
July 29, 2021
Page 4

and around the world by providing them upon request with access to various shipment information. It is therefore not surprising that CBP and other law enforcement personnel have described MSC and its employees in emails as "a great partner," "a reliable partner," and "extremely helpful."

Given all of MSC's efforts to institute procedures and cooperate with law enforcement to prevent drug smuggling, you will understand how distressed and upset MSC and the family that continues to own MSC are to have their over 50 years of work building the company from one vessel and their well-earned public reputation for having the highest ethical standards undermined by the criminal conspiracy involving the Defendant. Everyone at MSC is justifiably proud of the company's continuing success and reputation. The *Gayané* incident is an unwanted and undeserved stain on their record. The company and everyone in it are victims.

## II.     Conclusion

MSC understands and appreciates that, while it suffered significant financial and reputational damage as a result of the Defendant's criminal conduct, drug trafficking is a worldwide scourge that does untold damage to the lives of many millions of people around the world. As such, MSC reiterates its dedication to working to stamp out drug trafficking in the containerized shipping industry.

We hope you find the above information helpful. Please do not hesitate to contact us should you have any questions regarding the foregoing.

Respectfully submitted,

*Reed Brodsky*
_____
Reed Brodsky
Zainab Ahmad
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
917-574-8200
RBrodsky@gibsondunn.com
ZAhmad@gibsondunn.com

Honorable Harvey Bartle III
July 29, 2021
Page 5

                                      Stacey H. Mitchell
                                      Charles F. Connolly
                                      Akin Gump Strauss Hauer & Feld LLP
                                      2001 K Street, N.W.
                                      Washington, D.C. 20006-1037
                                      shmitchell@akingump.com
                                      cconnolly@akingump.com

cc by email:
       Assistant U.S. Attorney Jerome M. Maiatico
       Assistant U.S. Attorney Kelly M. Harrell
       Assistant U.S. Attorney Alexandra M. Lastowski
       Natasha Taylor-Smith, Esq.
       Elizabeth Toplin, Esq.
       Mythri A. Jayaraman, Esq.